### LET AN INJUNCTION ISSUE.

— ◆◆ —    •

## DORMENON'S CASE.

*By the Court,* LEWIS, *J. alone.** IN the month of June, 1809, on the motion of *Derbigny,* founded upon the affidavit of Mr. Guiet, the following rule was obtained against Pierre Dormenon.

"IT is ordered. that Pierre Dormenon shew cause on the first Monday in August next, before the Superior Court, to be holden at the City Hall, at the City of New-Orleans, why his name as attorney and counsellor at law, should not be stricken off the rules of said court, for having (as it is alleged upon oath) headed, aided and assisted the negroes of St. Domingo, in their horrible massacres, and other outrages against the whites, in and about the year 1793."

SPRING, 1810.
First District.

DORMENON'S
CASE.

If a fact be discovered which would have prevented the admission of an attorney, he may be stricken off the roll.

---

* MARTIN, J. declined giving an opinion, as the case had been argued before he came to this court.

R

At which day Mr. Dormenon appeared and denied the charge.

Whereupon a number of witnesses were called, and their examination taken in writing in open court ; and the said Dormenon requesting time to procure exculpatory testimony, he was allowed until the first day of January following. Shortly after which day he appeared and submitted his proof and defence.

The examination in support of the charge set forth in the rule was lengthy, and is placed upon the files of this court. The witnesses appeared to be men of veracity—the credit of none has been impeached. It does not appear that either of them has had the least personal animosity towards Mr. Dormenon, or that they were actuated by motives of revenge or persecution, or felt any other sentiment than that which the recollection of their past sufferings, in the presence of the person whom they considered to have been a principal author of them, was calculated to inspire. And their testimony, if true, fully substantiates the fact charged in the rule.

To repel the force of this testimony, Mr. Dormenon has produced testimonial proof (which is not denied) that in the various public employments in which the witnesses have known him, his conduct has been without reproach, and in his private life, exemplary and much esteemed ; and as an additional evidence of his having en-

joyed public confidence, he has exhibited a list of appointments in the judiciary, made by Gen. Rochambeau, on which his name appears.

THIS may be all true, but, as it relates to an epoch some considerable time subsequent to the year 1793, does not contradict the witnesses, who speak of his conduct only in that year.

MR. Dormenon, in his defence in writing, has laboured totally to discredit the witnesses against him, by attempting to shew gross contradictions and absurdities in their testimony. If there be not a perfect coincidence in the witnesses in all the details of their testimony, they certainly agreed upon the important fact.

IT is proved that Mr. Dormenon was a municipal officer under the commissaries Polverell and Santhonax, in the year 1793, when the general freedom of the slaves was proclaimed. This Mr. Dormenon admits.

IT is proved also, that in that character, wearing a scarf, his badge of office, he marched at the head of the brigands, acting in concert with their leaders, whose sole purpose and employment was the indiscriminate murder and massacre of the whites who refused to conform to the orders of the commissaries; and that their conduct in various expeditions in pursuit of the whites, was marked with unexampled cruelty and barbarity. It is equally in testimony, that Dormenon associated and was the intimate friend of De Lisle, Brissot, Faubert and Gai, who

headed the brigands in the quarter of Jacmel, Jeremy, and its dependencies.

THERE are many circumstances detailed by the witnesses which warrant a belief of these facts. In fact, they are as satisfactorily proven, as that Dormenon was a municipal officer, and can with as little plausibility be denied.

HAD the same evidence of these facts accompanied Mr. Dormenon's application for admission to the bar, I have no doubt he would have been refused.—The court now being possessed of it, it is equally their duty to exclude him. It is considered that the safety of the country requires that no person who has acted in concert with the negroes and mulattoes of St. Domingo, in destroying the whites, ought to hold any kind of office here, however fair their conduct may since have been.

AND from the evidence, no unprejudiced mind can doubt that such has been the conduct of Mr. Dormenon.

RULE MADE ABSOLUTE.

*See vol. II*, 305.