Bank of N.                          ANTHON, *for the Master.*
York
    *vs.*                           BRACKETT, *for Stephen.*
James Stry-
ker, Gentle-
man, one,&c. NOTE—In this case the inquiry was gone into, and the person was fully
            proved to be a slave.

---

If an attor-    IN this case an application had been made to the Court·
ney or coun-
sellor con- to compel Mr. Stryker to pay the sum of $70, with interest
ducts himself
dishonestly in and costs, or to disbar him.
his office, he
may be re-      *Riker, Recorder.* There is no doubt that the law has
moved by the
summary pro. confided to the Courts of Justice an authority over its of-
cess of the
Court. But ficers.
if he commits
a felony, it is     The law seems to have supposed that the Court alone
a forfeiture,
*per se,* of his ought to be entrusted with this high and delicate power.
office, altho'
the felony The Court directs, at pleasure, its ministerial agents. The
may not have high sheriff of the County, the coroner, the constables,
been commit-
ted in his of- and marshals, are all under the control of the Court.
ficial capacity This is right. This control must be placed somewhere,
But a crimin-
al act, altho' and it cannot be placed anywhere so fitly as in the Court
it may subject where the proceedings are had. Courts of Justice are
him to an in-
dictment,does governed by law. The law does not fluctuate, it is steady.
not work a
forfeiture of What is the rule for one man is the rule for all.
office, unless
the crime is     The 27th Art. of the Constitution of our State speaks
of a base na-
ture.       of attornies, solicitors, and counsellors of the Courts,
            and declares that "all attornies, solicitors, and counsel-
            lors at law, shall be appointed by the Court, and licensed
            by the first judge of the Court in which they shall re-

spectively plead or practice, and be regulated by the rules and orders of the said Courts. There can be no doubt that under this express constitutional provision, attornies, solicitors, and counsellors, must be bound by any legal rule, or order, that the Court in which they practice, may think proper to make.

NEW-YORK, March, 1816.

Bank of N. York. vs. James Stryker, Gentleman one, &c.

Such is the provision of the Constitution; and no mode of appeal is prescribed; none was thought to be proper. No tribunal was so safe as the Court itself.

With this view of the subject, the Court has taken great pains to fix the legal rule by which it shall be determined, whether an attorney, or solicitor, or counsellor, has exposed himself to a forfeiture of his office. The public good requires great precision upon the subject. The office of an advocate should be an office for life. He who defends the rights of *others,* ought himself to be independent. The Court which controls him, ought to control itself, so that nothing but the law shall be allowed to sit in judgment.

In the present case, according to the proof before the Court, Mr. Stryker has done a very improper act. He has, if the deposition of the teller of the New York Bank be true, drawn a check upon that Bank for $70, which was paid by the Bank at the time he so drew the check; he kept no account at that Bank. Upon being applied to, he gave another check for the amount on the Merchants' Bank, having no money or account in the Merchants' Bank. This check was dishonored. He swears, indeed, that he gave the check as a mere memorandums; and so informed the parties to whom he gave the checks; and he positively negatives, upon oath, any intention to commit a fraud.

NEW-YORK, March, 1816.

Bank of N. York. vs. James Stry-ker, Gentleman, one, &c.

The great question is, whether Mr. Stryker has done an act which works a forfeiture of his office as an attorney of this Court? This is to be determined by the steady rules of law. I have no hesitation in saying, that for a lawyer to draw a check upon a Bank in which he had no money, is highly culpable. It degrades him, and brings the profession, of which he is a member, into disrepute. But does it work a forfeiture of office? For a member of the bar to indulge in intoxication, is disgraceful. But no precedent can be found where a member has been struck from the rolls for that cause. Habitual lying is very infamous. To gamble is against the statute laws of the country : yet these offences have not been held a sufficient cause to disbar a member of the profession. Adultery has been committed openly, by distinguished, and otherwise honorable members, as well in Great Britain as in our own country, yet the offending party has not been supposed to destroy the force of the obligation which they feel from the oath of office.

From this statement, it is plain that it is not every vice that subjects a lawyer to be struck from the rolls. The question then recurs, what vice or crime will subject him to such a punishment ?*

1. If an attorney, solicitor, or counsellor, acts wrongfully, or dishonestly *in his office* as such attorney, solicitor, or counsellor, he is answerable, and may be punished by the loss of his office.

This is fully established by the authority referred to, and is, undoubtedly, the law of the land. Vide 1 Bac. Abr. nem. Ed. 306, Tit. Attorney, Let. K. 3 : Hawk. P. C. 277. 279.

If an attorney, solicitor, or counsel, commit a felony, though it have no connection with his office as such attorney, solicitor, or counsel, it takes from him his office. This is settled by the case of Brounsall, Cowper, 829, and is, undoubtedly, sound law. The first is founded upon this, that every lawyer takes the oath of office, which is, that he will truly and honestly demean himself in the practice of an attorney, solicitor, or counsel, as the case may be. If he acts otherwise, he falsifies his oath, and ought to be struck from the rolls. He cannot afterwards be believed.

So, if a man commits a felony, his oath cannot be relied upon. By the conviction he becomes disqualified. The Courts never will, and never ought to allow him to be an attorney, solicitor, or counsel ; for no faith can be put in his oath. It may be supposed that the case of the King *v.* Southerton. 6 East. 126, goes beyond the rules now laid down. Southerton was struck off the rolls as an attorney of the K. B., though the offence was not indictable. But in that case he was an attorney, and had written a fraudulent letter, threatening certain persons with a prosecution, by which he extorted from them a sum of money by way of composition for a penalty.

Part of this letter is as follows, " Sirs, I am applied to, " to prosecute an information against you, for selling cer- " tain medicines without stamps."

Now this was clearly done by him in his character as an attorney ; it was effecting *a fraud in that character ;* and, though not indictable, it falls within the rule first laid down. It was a base act done *quasi an attorney.* His office of attorney was called in to aid and facilitate the

NEW-YORK, March, 1816.

Bank of N. York.
*vs.*
James Stryker, Gentleman, one, &c.

NEW-YORK,  preparation of the fraud.    Not so with Mr. Stryker:
March, 1816.
what he did, he did without reference or allusion to his
Bank of N. official situation as a member of the bar.    The Bank paid
York.
vs.     his check as they would the check of any other private
James  Stry- individual, and they appealed to the laws, by suit, as
ker,  Gentle-
man, one, &c. against any other private persons, and they have already
obtained a judgment which they can enforce by due course
of law.

The Court will now lay down, with precision, the crimes
and offences which subjects an attorney to be struck from
the rolls.

1. If he be guilty of malconduct in his office as an at-
torney, he may be struck from the rolls.

2. If he commit an indictable offence or a crime,
which would disqualify him as a witness in a Court of
Justice, he shall be struck from the rolls.    But if an at-
torney commit an assault and battery, write a libel, or
do any other act not infamous, though it were indictable,
it could not effect his office as a lawyer.    So if he was to
do an act contrary to his oath of office, though not indict-
able, it would create a forfeiture of office, because, he vio-
lated his oath.

Is Mr. Stryker indictable for this improper act ?    For
all must admit it to be a very improper one.    According
to the settled rules of law, he is not indictable.    The
check was drawn on the Bank.    They were not bound to
accept or pay it.    They are like individuals.    The law
makes no difference.    Individuals sometimes pay drafts
for the honor of the drawer.    It was held in the case of
M. L. Davis and the Union Bank, that he was not indicta-
ble in such a case.

If Mr. Stryker had obtained goods or money from a *third* person, upon this check, with intent to defraud, I think he would have been indictable. Co. Lit. 6. Gould's Esp. 2 vol. 388. see also 4 Black. Com. p. 137. note 4. by Christian, and he could not have been a witness afterwards. In such a case, I think his office as an attorney would have been forfeited. His oath could not be taken. It has been ruled, that a person who obtained goods by false pretences, could not be a witness. This was decided in a very important case—the case of Roosevelt. The objection was taken by General Hamilton, and allowed.

The rules laid down, are these :—

1. If the act be improper, and done by the attorney, *quasi an attorney*, it may work a forfeiture of his office.

2. If it be a crime which would disqualify a person from being a witness upon oath, it will work a forfeiture of office.

3. If it be an indictable offence, but not of a nature to effect his credit, or if it be for an offence not indictable, and not done professionally, then a forfeiture of office is not produced.

The application is dismissed, but without costs.

It is proper in the present case, to state that the counsel opposed to Mr. Stryker, has done no more than obeyed the directions of his clients. The act of Mr. Stryker was extremely reprihensible. He does not justify it himself. The counsel for the Bank has submitted to the Court his authorities and his argument.

The Court has decided against the application, and

NEW YORK, has assigned its reasons.   No doubt the rule adopted by
March, 1816. the Court, is the safe rule.   If the act be not done by the
Bank of N. attorney in his office of an attorney, he ought not to lose
York. his office unless the offence be of a base nature, and indict-
James Stry-able by law.  This is the safe rule and may be safely used
ker, Gentle-man, one, &c as a precedent.   But it must be repeated, that in the opin-
ion of the Court, the learned counsel was not only fully au-
thorized, but bound under the directions of his client, to
make the present application, and he has conducted it
throughout with delicacy, learning, and candor.

WILKINS, *for  Bank.*

STRYKER, *in person.*

*NOTE.—Attornies are officers of the  Court, and may be punished on
a  summary process, either by attachment, or by having their names
struck off the roll of attornies, for an ill  practice attended with fraud
and corruption, and  committed  against the obvious rules of justice
and common honesty.   Bac. Abr. vol. I, p. 192., Tit. Attornies, letter
H., Cro.  Car. 52, 74., 6 Mod. 16, 187.,  1 Wills. 22.,  2 Wills. 382.,
Loft 271. 3 Caines, 221. 1 Martin, 129.

The King *v.* Brounsall, Cowp. Rep. 830.  This was an application to
the Court to strike Brounsall off the roll of attornies, he having been
convicted of stealing  a guinea, and  was branded in the hand and
confined in the house of correction.

Lord Mansfield.  " This application  is not in  the nature of a second
" trial, or a  new  punishment ; but the  question is, whether, after
" the  conduct of this man, it is  proper that he should continue a
" member of a profession which should stand free from all suspicion ?
"Suppose-he had been  a  justice of the peace, the conviction itself
" would *not remove  him  from the  commission ;* but could there be
" a  doubt that he ought to be struck out of the commission ?   As at
" present  advised, I am of opinion, without any doubt, that the rule
" should b̀e made absolute.   But as it is for the dignity of the profes-
" sion, that a  solemn  opinion should be given, we will take an op-
" portunity of mentioning it to all the judges."   Lord Mansfield

on this day,said, " We have consulted all the judges upon this case, NEW-YORK
" and they are unanimously of opinion that the defendant's having March, 1816.
"been burnt in the hand, is no objection to his being struck off the Bank of N.
" roll. And it is on this principle ; that he is an unfit person to prac- York.
" tice as an attorney. It is not by way of punishment; but the Court    *vs.*
" on such cases, exercise their discretion, whether a man whom they James Stry-
" have formerly admitted is a proper person to be continued on the ker, Gentle-
" roll or not. Having been convicted of felony, we think the defen- man, one, &c.
" dant is not a fit person to be an attorney. Therefore, let the rule
" be made absolute."

The decisions in Great Britain were all made in reference to attornies and
   not to counsellors; the distinction there is obvious ; here they are
   put upon the same footing by statute. 1 Rev. L. p. 416.

In the case of George W. Niven, who was tried in the common pleas of
   the city and county of New York, and suspended for malpractices, a
   distinction was attempted to be taken between counsellors and attor-
   nies. It was contended that a counsellor was not amenable to, and
   subject to be removed by the Court; that his fees were honorary, and
   not given for hire.

The Court said, *" An examination of the cases submitted to us, with
   " others which have come under our own research, has satisfied us
   " that all the officers appointed under the court, to and in the adminis-
   " tration of justice, are, when acting officially, subject to its au-
   " thority.

" Originally the parties to a suit attended Court in person, and it was
   " only by special statutes that they were allowed to prosecute and
   " defend by attorney. By the statute of 3, Jac. 1. ch. 7, it was pro-
   " vided, that those only should be admitted who ' were well prac-
   " ticed in soliciting causes, and had been found by their dealings to
   " be skillful and of honest dispositions.' Various statutes have been
   " passed in England since that period, as to the qualifications of at-
   " tornies and solicitors, and regulating their examination, admission,

*See Counsellor Sampson's Report of Niven's Trial, p. 87, pamphlet.

NEW-YORK,
March, 1816.

Bank of N.
York.

       *vs.*
James Stry-
ker, Gentle-
man, one, &c.

" and enrollment.   The Courts of that country have summarily pun-
" ished gross misconduct, malpractice, deceit, and misdemeanors
" committed by these officers, Cro. car. 74. 6 Mod. 187. 8 Mod. 109.
" 2 Cowp. 829. 6 East 140.   Although the admission and regulation
" of barristers is not made in England the subject of statuary pro-
" vision, yet it is laid down in Hawkins, in his treaties of the pleas
" of the crown, that notwithstanding they are neither officers of any
" court, nor invested with any judicial office, but barely practice as
" counsellors, yet inasmuch as they have a special privilege to prac-
" tice the law, and their misbehavior tends to bring a disgrace upon
" the law itself, they are punishable for any foul practice, as the min-
" isters of justice are.   Hawk. pl. of the crown, 2 b 2 ch. 22.
" sec. 30.

" In this state, however, the legislature has not made any distinction be-
" tween the different grades of the profession in regard to this admis-
" sion.   They are all examined, admitted, and enrolled.   'If any
" counsellor, attorney, or solicitor, is found notoriously in default of
" record or otherwise. guilty of any deceit, malpractices, or misde-
" meanor, he may be suspended, or put out of the roll, at the discre-
" tion of the court.   1 Rev. Laws of N. Y. 416.

" If guilty of deccit, or collusion, or consenting thereto, whereby to de-
" ceive the court or the party, he shall be punished by fine and im-
" prisonment, 1 Rev. Laws of N. Y. 417.   And the same penalties
" are by a late act attached to his purchasing debts, and chooses in-
" action for the mere purpose of litigation.

" It therefore appears that there are abundant precedent and authority
" for this summary interference, Nor can we perceive any just rea-
" son why a distinction should be made between the responsibility
" of an attorney and a counsellor.   They are both licensed by the
" Court : nor can they engage in professional employment without
" its special permission.   This permission can only be obtained by
" evidence of ability and integrity.   Both are deemed requisite to a
" candidate for admission before he is considered worthy of being en-
" trusted with the protection of the property, and the vindication of

" the rights of his fellow citizens ; and it would seem to follow, that " the same power which conferred ought to be authorized to with- " draw this permission whenever those valuable purposes are " abused.

NEW-YORK,
May, 1823.

" It is proper that our courts should inquire into the learning and moral " character of applicants, for either of those grades, in order that a " learned and upright bar may be entrusted with the interests of the " community : is it not equally salutary that they should have the " power to withdraw this sanction when it satisfactorily appears to " them from the official misconduct of individuals in either grade, " and their total want of integrity, that they are no longer worthy of " public confidence. It would be strange indeed if this vigilance " should be required only towards those who were passing the thresh- " hold of our Courts, and that when once admitted, they should bid de- " fiance to restraint, and with impunity be guilty of acts which would " have debarred their entrance. If the great purposes of justice re- " quire this early caution and this careful examination, they still " more imperiously demand the same watchfulness over those who " have been presented to the public, as deserving of their confidence " and patronage. The power thus given to our courts is necessarily " given. Its utility has been tested and sanctioned by experience. " It should be discreetly but fearlessly exercised.