Martin, J.
observed that the rehearing was not prayed for, with the hope of shewing the absence of guilt in the defendant, nor on the ground of the punishment inflicted being excessive.
1. That the case relied on by the counsel, Gray & al. vs Laverty, 4 Martin, 436, in order to establish his first position, (viz. that the judgment of this court is unconstitutional and null; the reference being only to the third Partida) proves the contrary proposition, even in the case of a judgment, which contains no *162 reference. "When it (the reference) is not made, those who are to pass on the conduct of the judge, in case he may he prosecuted therefor, may make a strict enquiry; but a court who is required to reverse a judgment, may fairly conclude, even when the reference is obvious, that it was impossible for the judge to make it, on the score of his having been ignorant of it. So, a good judgment, rendered according to the light of the judge's understanding, must be supported.”
The absence of any reference at all does not, therefore, render the judgment null.
The judge may not be ignorant of the law on which he pronounces; he may well recollect the very words of it, and yet not remember the number of the chapter, nor the page of the text; and the volume containing it may be out of his reach. There are certain parts in the state, in which a particular volume, containing the textual law on which a judgment is grounded, may not be within a circle of one hundred miles. Will it not suffice there, that the judge should refer to the particular law, by quoting its very words, or referring to the particular volume which contains it?
*163 The framers of the constitution foresaw this, and required the reference to the particular law, as often as it may be possible; but the reasons in all cases.
“The ignorance of a particular law,” said the court, in the case quoted by the counsel, "is possible, in a judge not bred to the profession; it may exist even in those who are; but it cannot be presumed, that a judgment was rendered, without the judge knowing the reasons which determined him.” Id. 464.
In the present case, the law on which the judgment is grounded, is referred to by the volume which contains it, the third Partida, and by its contents, viz. that which forbids the judges to suffer the arrogant and indecorous language of lawyers; and the clerk assures us, he informed the defendant, when he permitted him to take a copy of the judgment, that the court had made enquiry for the volume, and finding that it was not within its reach at the moment, observed the reference might be extended at leisure.
2. That contempt of court is an offence noticed by the Spanish law. Judges are directed so to demean themselves, that their *164 authority may not be contemned: que no les nasca en despreciamento. Part. 3, 4, 8; as Lopez expresses it, quod honori suo contemptus non generetur; or according to the Roman law, ne contemni patiatur. ff. 1, 18, 20. “ This,” proceeds the Partida, “ would be, if any one was to argue before them with arrogance, con sobervia. Loco citato.
Lawyers, who demean themselves contemptuously before the court, may be suspended. The laws, cited by the counsel, contradict his assertion, that the causes, for which suspension may be pronounced, are all declared and enumerated in different laws, and no where declared under any general name or appellation.
If the judge, by his sentence against any lawyer, on account of his ill fame, or any other just cause, o por alguna razon derecha, forbid him to practice, he will no longer be permitted to practice. Part. 3, 6, 11.
If the judge forbid any lawyer to practice before him, for any just cause, por alguna razon derecha, during a fixed period: as if the lawyer be tedious, contradictory, or for speaking too much, or for any other like cause, for alguna razon semejante destas, henceforth he may not practice. Part. 3, 6, 12.
*165 Lawyers should not interrupt each other, nor should they make use, in their arguments, of any improper or indecent expressions, &c. Those who conduct themselves, as is here ordered, are to be treated with respect, and listened to by the judge; and he may prohibit those from speaking before him, who conduct themselves otherwise: e a los que contra esto feciessen, puede les defender, que no razonen ante el. Part. 3, 6, 7.
3. That the Spanish law, which thus forbids the judge to suffer any contempt of his authority, is a penal one. For it cannot be carried into effect without inflicting some penalty. And a lawyer guilty towards the court, of any contemptuous action, expression or gesture, may be instantly punished, by suspension, at least; and nothing, as is gratuitously asserted, requires the judge to forbear punishing, till the offence be repeated.
4. That no statute of this state has repealed those parts of the law of Spain, which authorise a court to punish the contemptuous behaviour of a lawyer, by suspension.
A statute is said to repeal a former one, when it is contrary thereto in matter. Leges posteriores, priores CONTRARIAS abrogant. It is not *166 enough that the latter statute be different in its matter, it must be contrary.
The statute of 33 H. 8, 3, provided, that any examined before the king’s counsel, who confesses treason, shall be tried in the county where the king pleases, and it was held to be repealed by that of 2 Ph. and M., which directs that all trials for treason, shall be according to the common law. 11 Co. 63, a. The reason is apparent; for the latter statute directed that all trials for treason, which include those of persons mentioned in the statute of Hen. 8. should be in the course pointed out by the common law, and this was contrary to the provision of the statute of H. 8.
A statute is also said to repeal a former one, where it enacts a thing inconsistent with it.
So the statute of 1 Ed. 6, 2, which provided, that “ process shall be in the king’s name,” was held to have been repealed by that of 1 and 2 Ph. and M. 2, which provides, that “ all ecclesiastical jurisdiction of bishops, &c. shall be in the same estate as to process, as it was in the time H. 8.” For the two provisions were inconsistent. 12 Co. 8.
But, though the provision of the latter statute be different, if they be neither *167 contrary nor inconsistent, the former statute is not repealed.
As if by a statute, an offence be made indictable at the quarter sessions, and a subsequent one makes the same offence indictable at the assizes, the former statute is not repealed; because the provisions of the latter are neither inconsistent, nor contrary with those of the former. Both statutes then may, and ought to stand in force, and the quarter sessions and the assizes shall have concurrent jurisdiction. 1 Bl. 89, 90.
And if the two statutes may be reconciled together, the former shall not be held to be repealed.
So the statute of 16 R. 2, 5, providing that a person attainted on a premunire shall forfeit all his land, was held not to repeal the statute de donis as to land in tail, against the issue in tail. 11 Co. 636.
The statute of 5 El. 4, which provided that none should use a trade, without being an apprentice, was held not to repeal the 4 and 5 Ph. and M. which directed that no weaver use, &c. 6 Co. 196.
The statute of P. and M. directed the forfeiture of any woollen cloth or kersies, wove *168 by any person not an apprentice, or not having exercised the trade for seven years. That of Elizabeth repealed " all the statutes, heretofore made, and every branch of them, as touch or concern the hiring, keeping, depending, working, wages or order of servants, workmen, artificers, apprentices and labourers, or any of them, and the penalties, and forfeitures concerning the same, shall be, &c. repealed, utterly void, and of none effect."
Yet Cogeril, having had judgment for a forfeiture, under the statute of P. and M., Plashfield, the defendant, brought a writ of error to reverse it, on the ground, among others, that the statute relied on was repealed by that of Elizabeth; sed non allocatur. For, looking into the statutes, they may stand together; and it was said that a latter statute in the affirmative, shall not take away a former act, and the rather, if the former be particular, and the latter general. Griffin’s case. 6 Co. Ne.
This case places the rule (that where the legislative will has once been expressed, its binding force shall continue till it be unequivocally recalled) in the clearest point of view. For, in the preamble of the latter statute, the intention of parliament is formally expressed, *169 that “the substance of as many of the said laws (the former) as are meet to be continued, shall he digested and reduced into one sole law and statute.” “Clothiers, woollen-cloth weavers, cloth-workers, are mentioned as tradesmen, who are the particular objects of the statute.
In the criminal law, where the utmost rigour prevails against the extension of offences, and punishment is so strictly guarded against, (we find it established by numerous decisions) that a positive statute does not repeal the common law, and the state prosecutes either on the statute, or at common law.
The 19th section of the first judicial act of 1813, provides, that the superior courts shall have authority "to punish all contempts by fine, not exceeding fifty dollars for each offence, and also by imprisonment not exceeding ten days.”
Now, here are no negative words. The substance of the new act may well stand with that of the Partida. The two provisions are not contradictory, and may fairly exist together.
The above provision is literally copied from the 17th section of the act of 1805, chapter *170 26, 2 Martin's Digest, 116, which gave authority to the superior court of the late territory of Orleans, to punish contempts. Yet that court did not think, that the authority given them by that act, deprived them of the power of striking off attornies from the roll, much less of suspending them. See judgments of that court, 1808, 1812, and 1 Martin, 129. 2 id. 305.
Judge Moreau and Mr. Carleton, the two gentlemen, who under an act of the legislature, have lately published, The laws of las Siete Partidas, which arc still in force, in the state of Louisiana, have preserved the laws of the third Partida, under consideration, as unrepealed by any law of the state.
Indeed, who can say that a Spanish judge would consider as incompatible, the authority given him by the third Partida, to suspend a lawyer who indulged himself with indecorous language towards him, and that of sending to prison any other individual taking the same liberty.
The judges of England do not think their power of punishing contempts of their authority, by fine and imprisonment, incompatible with that of punishing by a suspension, such *171 attornies as are not restrained by a sense of duty, from the indulgence of angry passions in the exercise of their functions, in the presence of a court.
In what state of this union are the two powers considered as incompatible?
That nothing was said of the law of the Recopilacion de Castilla, which forbids judges to live with any advocate or notary—it not being easy to discover in it any bearing upon the question under consideration.
That, upon the whole, after a most minute investigation of the reasons adduced by the counsel, nothing was discovered in them that gave rise to the least doubt, and consequently no rehearing ought to be granted.
Mathews, J.
said that he assumed it, as incontrovertibly true, that according to the Spanish laws, an advocate may be punished by suspending him from the exercise of his profession, before a court which he has offended by arrogant and contemptuous behaviour. And that these laws (so far as they are not repealed by the legislative authority of the late territorial and the present state government) establish rules of proceeding in *172 all cases similar to that of the present. In opposition to the correctness and legality of our proceedings against the offender in this case, it is contended, that the laws of Spain, on the subject, are virtually repealed by the 17th section of the judiciary act of 1813, in which it is declared, that “ the supreme court shall have power to punish all contempts by fine, not exceeding fifty dollars for each offence, and also by imprisonment, not exceeding ten days." To ascertain whether this provision of the act abrogates and repeals all former laws authorising punishment for contempts, it is necessary to resort to known and established rules of abrogation and repeal. The first is, that old laws are abrogated and repealed by those which are posterior, only when the latter are couched in negative terms, or are so clearly repugnant to the former, as to imply a negative. Second, a particular law is not repealed by a subsequent general law, unless there be such repugnancy between them, that they cannot both be complied with, under any circumstances. Thirdly, if many laws be made on the same subject, which are not repugnant in their provisions, they ought to be considered as one law and so construed.
*173 The slightest application of these rules, to the case under consideration, will shew most evidently, that the Spanish laws, which relate to the deportment and government of advocates, are not repealed by the act of the legislature relied on as having produced this effect. So far as it relates to punishment for contempts, it is not couched in negative terms, nor is the matter contained in it, so repugnant to former laws, as to imply a negative—The law which forms the rules of conduct for advocates, and provides the necessary sanctions for keeping them orderly and decorous, and preventing insults and contumely to courts of justice, is particular, being limited to a to a certain class of citizens; the section of the act cited, is general, and relating to all persons, and the provisions of both may be easily complied with. Considered as one law, providing for different things, there is clearly no repugnancy between the special and general inactment, and each ought to have its due effect.
Is it not a sound legal axiom that there can be but one kind of punishment, for one and the same offence? Contempts committed by persons who do not stand in any particular relation to the court, may be punished by *174 fine or imprisonment, or by both fine and imprisonment. An officer, such as an attorney and counsellor, is punishable by suspension, from the exercise of the functions of his office, in the court which he has offended by arrogance and contempt; and when the offence, as in the present case, has been committed, under colour of his profession, I think it most proper, that he should be punished in relation to his office.
As the judgment is not complained against on account of the severity of the punishment, it is useless to express any opinion on that matter.